## GRAHAM *v.* ANN ARBOR RAILROAD CO.

1. RAILROADS—MOTOR VEHICLES—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE.

Automobile driver approaching crossing, who failed to look in direction from which freight train, in plain view, was backing across crossing, was guilty of negligence which was proximate cause of accident and continued active to instant of collision, barring right to recover for injuries resulting in death.

As to care required of driver of automobile at railroad crossing, see annotation in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702.

2. SAME—SUBSEQUENT NEGLIGENCE.

> Where train crew backing freight train over crossing had no opportunity to stop train and avoid collision with automobile after they were aware of emergency, they were not guilty of subsequent or discovered negligence, although they may have been guilty of negligence in failing to keep proper lookout in approaching crossing.

Appeal from Shiawassee; Collins (Joseph H.), J. Submitted April 8, 1932. (Docket No. 69, Calendar No. 36,404.)   Decided June 6, 1932.

Case by Alton Graham, administrator of the estate of Zylpha Graham, deceased, against Ann Arbor Railroad Company, a corporation, for personal injuries, resulting in decedent's death, received in a crossing accident.   Directed verdict and judgment for defendant.   Plaintiff appeals.   Affirmed.

*George E. Pardee* and *Herbert L. Porter,* for plaintiff.

*Smith, Beckwith & Ohlinger, F. J. Shields,* and *Pulver & Bush,* for defendant.

NORTH, J.   Plaintiff by this suit seeks to recover damages incident to an automobile railroad crossing accident which resulted fatally to plaintiff's decedent.   At the close of plaintiff's case the trial judge directed a verdict for defendant on the ground of contributory negligence of plaintiff's decedent. Plaintiff has appealed, and contends the case should have been submitted to the jury on the theory of subsequent or discovered negligence.

In the daytime plaintiff's decedent was driving a Ford coupe in a southerly direction on a paved street in Corunna, Michigan; and as she approached

the railroad crossing defendant's employees were backing a locomotive and four freight cars from the east toward the crossing. There was nothing to obstruct decedent's view of this crossing or of the approaching freight cars. At the time she was between 100 and 125 feet from the crossing, the approaching train was two or three car lengths away. There is testimony that decedent was driving approximately 20 miles per hour, while the train was moving at substantially eight miles per hour. The head brakeman was stationed on top of the leading car. He noted that Mrs. Graham continued to approach the crossing without slackening her speed, that she made an observation in a westerly direction but thereafter continued to look straight ahead. The brakeman tried to attract her attention by yelling at her; and not succeeding he tried to stop the train by signaling the engine crew. Crossing signals had been given both by ringing the bell on the locomotive and sounding the whistle. The last of the three blasts was given substantially at the time the leading car reached the easterly line of the street. When the brakeman discovered Mrs. Graham's peril he attempted to give the so-called frantic or emergency signal to the engineer which called for instantly stopping the train. In the excitement of the moment the brakeman seems to have been in a position from which the engineer could not see this signal. When the brakeman discovered this he went to the side of the car and gave the emergency signal from a point where he could see the fireman, the air brakes were applied and the train stopped; but this application of brakes was not made until just after the collision between the train and the automobile. The train proceeded about three car lengths after the brakes were ap-

plied, the automobile was wrecked, the head freight car was derailed, and Mrs. Graham received injuries from which she died in less than an hour. There was no change in the rate of speed of either the train or the automobile before the instant of collision. There is testimony that the train could have been stopped within a distance of six feet to a car length.

It is unnecessary to state the circumstances more in detail. On this record, the trial judge held that Mrs. Graham was guilty of contributory negligence which continued to the instant of the accident and which was a proximate cause thereof. He held against plaintiff's contention that there was testimony tending to establish subsequent negligence on the part of defendant. We think this holding of the trial judge was necessitated by the record in the case. The facts and circumstances are so similar that we are constrained to hold the instant case is controlled by *Johnson* v. *Railroad Co.*, 246 Mich. 52, 55. As was said there, so it might be said here:

"These acts of negligence on the part of both parties continued without interruption until the time of the collision. The obligation of each to use care to avoid the consequences of the other's negligence was mutual. 'There is no more of an absolute standard of ordinary care and diligence in the one instance than in the other.' "

It may be assumed, as alleged, that the engine crew was guilty of negligence in failing to keep a proper lookout for signals from the brakeman or for highway travelers approaching the crossing, and that the brakeman was also negligent in his failure at first to give his signals to stop from a position where he could be seen by one of the engine

crew. But it also conclusively appears that at the same time plaintiff's decedent, who was familiar at least in a general way with this railroad crossing, was guilty of negligence in driving in daylight upon defendant's tracks at an unprotected crossing in front of approaching freight cars, and without having looked at all in the direction from which they were coming. Surely such negligence on the part of plaintiff's decedent was a proximate cause of the accident and continued active to the very instant of the collision. Her opportunity to stop her automobile before reaching the point of collision was at least equal to that of defendant's agents to stop the freight train. Under the circumstances of this case, the only additional thing defendant's employees could have done to avoid the accident after the brakeman discovered decedent's probable peril was to stop the train. The record is barren of proof that either of the engine crew had an opportunity to stop the train by applying the brakes after they were aware of the emergency. It might well be said that there was concurring negligence; but plaintiff's theory of subsequent or discovered negligence is not applicable. *Rushford-Surine* v. *Railway Co.,* 239 Mich. 19; *Howell* v. *Hakes,* 251 Mich. 372.

Judgment affirmed, with costs to appellee.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.